IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDSAY RYAN STEELE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-20-1294-STE |
| KILOLO KIJAKAZI,<br>Acting Commissioner of the<br>Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.      PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 156-164). On review, the Appeals Council remanded the case for further administrative proceedings. (TR. 171-172). Following a

second administrative hearing, the ALJ issued another unfavorable decision. (TR. 46-56). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the second decision of the ALJ became the final decision of the Commissioner for purposes of the instant appeal.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 30, 2017, the application date. (TR. 48). At step two, the ALJ determined Ms. Steele suffered from the following severe impairments: bipolar disorder; generalized anxiety disorder; obsessive compulsive disorder; schizoaffective disorder; depressive disorder; and borderline personality disorder. (TR. 48). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 49).

At step four, the ALJ concluded that Ms. Steele retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can relate to supervisors and co-workers on a superficial work basis. The claimant can have no contact with the general public. The claimant can adapt to a work situation.

(TR. 50).

At step four, the ALJ noted that Plaintiff could not perform her past relevant work. (TR. 55). However, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 89). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 89). At step five, the ALJ adopted the VE's testimony and concluded that Ms. Steele was not disabled based on her ability to perform the identified jobs. (TR. 56).

### III.   ISSUES PRESENTED

On appeal, Ms. Steele alleges that the ALJ erred: (1) in evaluating medical opinions and (2) at step five. (ECF Nos. 17:7-13).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   NO ERROR IN THE ALJ'S EVALUATION OF MEDICAL OPINIONS

The record contains evidence documenting Plaintiff's treatment from two mental health professionals—Licensed Clinical Social Worker (LCSW) Deborah Randolph and Dr. Janita Ardis. *See* TR. 545-626, 704-715, 734-1118. Ms. Steele alleges the ALJ erred in evaluating specific opinions offered by both individuals. (ECF No. 17:7-10). The Court disagrees.

### A.   Opinions from Ms. Randolph

On November 16, 2016, Ms. Randolph authored a "To Whom it May Concern" letter stating that Ms. Steele was unable to work due to her history of psychiatric inpatient hospitalizations, obsessive compulsive disorder, and bipolar II disorder. (TR. 545). On May 8, 2018, Ms. Randolph authored a similar letter, stating:

- Plaintiff suffered from attention deficit-hyperactive disorder; bipolar I, moderate with rapid cycling features; obsessive compulsive personality disorder; and panic disorder, which made it "virtually impossible" for Ms. Steele to work;

- that she had treated Plaintiff since 2010;

- Plaintiff "ha[d] a great deal of difficulty coping with normal activities of daily living;" and

- Plaintiff "must be constantly supervised to complete the easiest of tasks . . . [and] is unable to work without constant supervision."

(TR. 734).

### 1. ALJ's Duty to Evaluate Evidence from Ms. Randolph

Ms. Steele argues that the ALJ erred by failing to weigh Ms. Randolph's opinion in accordance with the regulations set forth in 20 C.F.R. § 416.927—which outlines the standard used to evaluate medical opinion evidence from acceptable medical sources for claims filed before March 27, 2017. (ECF No. 17:8-9). "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). But for claims filed before March 27, 2017 such as Plaintiff's,[1] Ms. Randolph, as a licensed clinical social worker, would be considered an "other medical source." See SSR 06-03p, 2006 WL 2329939, at *2. "The Administration's regulations contemplate the use of information from "other sources," both medical and non-medical, "to show the severity of an individual's impairment(s) and how it affects the individual's ability to function." Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 416.902); see SSR 06-03p, 2006 WL 2329939, at *2.

An ALJ is required to explain the weight given to opinions from other medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012). "In the case of a nonacceptable medical source like [Ms. Randolph], the ALJ's decision is sufficient if it permits [the court]

---

[1] (TR. 48).

5

to 'follow the adjudicator's reasoning.' " *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 WL 2329939, at *6).

## 2. No Error in the ALJ's Treatment of Ms. Randolph's Opinions

The ALJ considered both letters from LCSW Randolph, but ultimately gave the letters "little weight," which is tantamount to rejection of the same. *See* TR. 20; *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). In doing so, the ALJ provided three rationales: (1) Plaintiff's treatment records "have repeatedly shown little to no symptoms during . . . mental status examinations;" (2) an inconsistency between Ms. Randolph's opinion and reports from Plaintiff and her mother regarding Plaintiff's daily activities; and (3) a lack of documentation regarding "restricted capacity" in Ms. Randolph's treatment notes. (TR. 53). Plaintiff argues that the ALJ erred by failing to mention the following findings present in Ms. Randolph's treating notes:

- Plaintiff's anxious mood;
- Plaintiff's problems with "unrealistic expectations;"
- A need for Plaintiff to be more independent;
- A need for Plaintiff to have help with her depression; and
- Notes that at times, Plaintiff was "regressing."

(ECF No. 17:9). According to Ms. Steele, the ALJ ignored these findings which supported Ms. Randolph's opinions, along with the fact that Ms. Randolph had treated Plaintiff since 2010. (ECF No. 17:9). Plaintiff characterizes the oversight as improper "picking and choosing," and argues that remand is warranted on such basis. (ECF 17:9-10).

The Court however, disagrees, first noting that Plaintiff has incorrectly relied on 20 C.F.R. § 416.527 as a basis for the ALJ's review, and second, reminding Ms. Steele that in evaluating opinions such as those given by Ms. Randolph, an ALJ is required only to explain the weight given to the opinions "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *See supra*. The Court concludes that the ALJ complied with such directive.

For example, in support of his statement that Plaintiff exhibited "little to no symptoms during . . . mental status examinations," the ALJ cited evidence from visits to Dr. Ardis, who was also treating Plaintiff for her mental health. *See* TR. 52, 53 (citing TR. 780, 801, 803-805, 1116-1118). And although Ms. Randolph stated that Plaintiff "has a great deal of difficulty coping with normal activities of daily living;" the ALJ noted that this statement was inconsistent with evidence proffered by Plaintiff and her mother that Ms. Steele is "able to shop in stores, get along with others, go out to eat, maintain friendships, and go to the gym 3 to 4 times per week (also sometimes with friends)." (TR. 54). According to the ALJ, "[c]onsidering that the claimant has alleged a paralyzing degree of social anxiety, it is highly inconsistent that she should be able to perform these tasks which involved extensive exposure to other people, including strangers, in places that are frequently crowded." (TR. 54). Finally, the ALJ points to a lack of documentation regarding "restricted capacity" in Ms. Randolph's treatment notes as a basis for rejecting her opinion. (TR. 53). These explanations are sufficient to permit the court to "follow the

7

adjudicator's reasoning" regarding his evaluation of Ms. Randolph's opinions. *See supra*. As a result, the Court finds no error in the ALJ's evaluation of the same.

### B. Dr. Ardis' Opinion

On July 7, 2017, Dr. Ardis completed a Mental Medical Source Assessment regarding Plaintiff's mental health that showed deficiencies in the areas of "understanding and memory," "sustained concentration and persistence," "sustained concentration and persistence," "social interaction," and "adaptation." (TR. 613-614). The ALJ rejected these findings, concluding that the opinion was "highly inconsistent with the evidence as a whole." (TR. 53-54). In support of that conclusion, the ALJ cited a lack of consistency with Dr. Ardis' treatment notes, and Ms. Steele's various activities of daily living which "require significant social interaction, memory, concentration, etc." (TR. 53-54).

#### 1. ALJ's Duty to Evaluate Evidence from Dr. Ardis

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 404.1527(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy

8

Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted). If controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 416.927(c).

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at 5. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### 2. No Error in the ALJ's Treatment of Dr. Ardis' Opinions

Ms. Steele alleges that the ALJ erred in considering Dr. Ardis' opinion[2] because various findings in Dr. Ardis' treatment notes "support[] Dr. Ardis' opinion, and her length

---

[2] The Court presumes that Plaintiff is referring to the Mental Medical Source Statement that Dr. Ardis authored on July 7, 2017, although Plaintiff does not expressly refer to the same, instead defaulting only to referencing "Dr. Ardis' opinion." (ECF No. 17:9).

9

of treatment trump the opinions of the non-examining mental experts." (ECF No. 17:9-10). According to Plaintiff, the ALJ's failure to discuss specific findings from Dr. Ardis' treatment notes "constitutes improper picking and choosing while ignoring evidence supportive of Claimant[.]" (ECF No. 17:10). The Court disagrees.

The findings which Plaintiff cites in support of Dr. Ardis' opinion are notations that Plaintiff:

- Had side effects from medications;
- Suffered from mania, including mood swings;
- Had a conflict with her neighbor;
- Depends on others to the point of not being able to leave the house alone;
- Has anxiety which caused problems with attention and concentration; and
- reported hallucinations in November 2019.

(ECF No. 17:9). But these findings are not medical opinions worthy of independent evaluation. *See* 20 C.F.R. § 404.1527(a)(1) ("[M]edical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Instead, it appears as though Ms. Steele would have the Court re-weigh Dr. Ardis' findings and conclude that they support the opinions proffered in the Mental Medical Source Assessment—which this Court will not and cannot do. *See Vigil*, 805 F.3d at 1201 (noting that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

## VI. NO ERROR AT STEP FIVE

As part of the RFC, the ALJ concluded that Plaintiff could only "understand, remember, and carry out simple, routine, and repetitive tasks." (TR. 50). With these limitations, the VE identified three jobs from the DOT which he deemed the Plaintiff capable of performing: (1) Laundry Worker, DOT #302.685-010; (2) Mail Clerk, DOT #209.687-026; and (3) Office Helper, DOT #239.567-010. (TR. 89). The ALJ adopted the VE's testimony and concluded that Ms. Steele was not disabled based on her ability to perform the identified jobs. (TR. 56).

The DOT defines occupations, in part, by the "reasoning level" required to perform the occupation. Reasoning levels describe a job's requirements regarding understanding instructions and dealing with variables. These levels range from one to six, with one being the simplest and six the most complex. Reasoning level two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702. Reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Id.* As noted by Plaintiff, all three jobs the ALJ relied on at step five require reasoning level two or reasoning level three. *See* DOT #302.685-010 (Laundry Worker—reasoning level two); DOT #209.687-026 (Mail Clerk—reasoning level three); and DOT #239.567-010 (Office Helper—reasoning level two).

11

Ms. Steele argues that her limitation to jobs involving only the ability to "understand, remember, and carry out simple, routine, and repetitive tasks" conflicts with both reasoning level two and reasoning level three, which are required of the identified jobs. (ECF No. 17:10-13). Accordingly, Plaintiff alleges a lack of substantial evidence to support the step five findings. (ECF No. 17:10-13). The Court disagrees.

At step five, the ALJ must "investigate and elicit a reasonable explanation for any conflict" between the DOT and a VE's testimony. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). In *Hackett v. Barnhart*, the Tenth Circuit held that a limitation to "simple and routine work tasks" "seems inconsistent with the demands of level-three reasoning" and "appears more consistent" with level-two reasoning. *Hackett*, 395 F.3d at 1176. Courts have consistently relied on *Hackett* in finding a conflict between a limitation to "simple" tasks and jobs with reasoning level three. *See, e.g.*, *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016). Additionally, in *Stokes v. Astrue*, the Tenth Circuit stated that a limitation to "simple, repetitive, and routine work" "is consistent with the demands of level-two reasoning." *Stokes*, 274 F. App'x 675, 684 (10th Cir. 2008). *Stokes* rejected the claimant's argument that a limitation to "simple, repetitive, and routine work should be construed as a limitation to jobs with reasoning level-rating of one." *Id.*

In this case, the ALJ limited Ms. Steele to performing simple, routine, and repetitive tasks. As stated, reasoning level two requires carrying out "detailed but uninvolved written or oral instructions" and dealing with "a few concrete variables in or from standardized situations." *See supra*. Pursuant to *Hackett* and *Stokes*, Ms. Steele's limitations do not inherently conflict with reasoning level two. *Hackett*, 395 F.3d at 1176;

*Stokes*, 274 F. App'x at 684. Thus, the identified reasoning level two jobs of Laundry Worker and Office Helper remain. Accordingly, the Court rejects Plaintiff's contrary argument.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on March 15, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE